**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SALIMA HAWTHORNE, K.A., *et al.*, | |
| *Plaintiffs*, | CIVIL ACTION |
| v. | No. 15-01572 |
| MUNICIPALITY OF NORRISTOWN, *et al.*, | |
| *Defendants*. | |

**<u>MEMORANDUM</u>**

**PAPPERT, J.**                                                    **February 5, 2016**

This is a very disappointing case which concludes today with this Opinion, one the Court is discouraged to have to write. The lawsuit concerns a police pursuit of a stolen car whose occupants were injured when the car crashed. Plaintiffs tell the story of police officers racing through the streets of a local municipality recklessly endangering the citizenry and then maliciously ramming the car, causing the "catastrophic collision" and the resulting injuries. The municipality is accused of having a pursuit policy which caused this unconscionable conduct and for failing to train the officers not to engage in it.

The story is pure fiction. Video from a dashboard camera in one of the officer's cars reveals the Plaintiffs' allegations to be patently false. The video was of course produced to the Plaintiffs' counsel in discovery. Undeterred, counsel continued to subject the officers and the municipality to his charade. Indeed, just weeks ago during oral argument on the municipality's motion for summary judgment, counsel described the video (which the Court at that time had yet to see) as "very grainy," of "not terribly high quality" and said that it "would raise questions."

1

The Court has now watched the video and the only question it raises is why the Plaintiffs and their lawyer continued to pursue this case.

## I.

On November 7, 2013, William H. Ball ("Ball") reported to the Norristown Police Department ("Department") that his car, a black Nissan Altima, had been stolen. (Defendant's Statement of Material Facts ("DSMF") ¶¶ 5–6, ECF No. 24 at Ex. 1; Incident Report Forms, ECF No. 24 at Exs. E–F.)[1]  At approximately 11:00 p.m. on November 8, K.A., a minor, and Ameer Johnson ("Johnson") left their house to walk approximately four blocks to the Pub Deli in Norristown. Daquan Bailey ("Bailey"), driving Ball's car, offered them a ride. (Plaintiffs' Statement of Material Facts ("PSMF") ¶¶ 6–11, ECF No. 28 at Ex. 1; DSMF ¶¶ 9, 19–22; K.A. Dep. 29:18–23, 30:1–2, ECF No. 24 at Ex. I; Johnson Dep. 19:22–23, 28:2–29:20, ECF No. 24 at Ex. K.)  K.A. and Johnson were purportedly unaware that the car had been stolen. (PSMF ¶ 22; K.A. Dep. 38:1–13; Johnson Dep. 62:14–17.)

Just before midnight, Norristown Police Corporal Bishop[2] ("Bishop") while off duty, reported seeing the stolen car and followed it until on duty Corporal David Brooke ("Brooke"), and then later Officer Carl D. Robinson, Jr. ("Robinson"), could respond. (DSMF ¶¶ 7, 8, 28; Incident Report Form, ECF No. 24 at Ex. F; Brooke Dep. 22:7–21, ECF No. 24 at Ex. G.) Brooke activated his lights and siren and pulled alongside Bailey. With K.A. and Johnson still in the car, Bailey sped away and Brooke began to pursue him. (PSMF ¶ 5; DSMF ¶¶ 10, 13–14; Brooke Dep. 22:22–23:8.)  Soon after, Robinson began to follow Brooke. (DSMF ¶ 11; Robinson Dep. 8:14–23, ECF No. 24 at Ex. H.)  K.A. testified that Bailey fled from Brooke's car

---

[1] Plaintiffs' Statement of Material Facts fails to conform with this Court's Policies and Procedures, § II.D.4. The Court accordingly often relies on Norristown's Statement of Material Facts for citation purposes, even though all facts are undisputed.

[2] Corporal Bishop's first name is absent from the record.

at a speed of fifty miles per hour and reached a high speed of sixty miles per hour during the

pursuit. (DSMF ¶ 17; K.A. Dep. 45:16–20, 60:16–22.) K.A. also testified that there was at least

one time that Bailey did not stop at a stop sign. (K.A. Dep. 51:11–22.)

Robinson's car was equipped with a dashboard camera or "dash cam." (PSMF ¶¶ 16–18;

DSMF ¶ 38; Robinson Dep. 8:6–12; Pursuit Video, ECF No. 24 at Ex. J; Benson Dep. 33:17–24,

ECF No. 24 at Ex. L.) Both Brooke and Robinson drove their police cars at around thirty-five

miles per hour with lights and sirens activated during the pursuit. (DSMF ¶¶ 12, 15; Robinson

Dep. 8:8–23, 10:14–15.) There was little traffic and few to no pedestrians in the area. (DSMF

¶¶ 33–34; Brooke Dep.19:19–20:6; Robinson Dep. 18:6–7; Pursuit Video.) Corporal Joseph

Benson ("Benson") monitored the pursuit from the Department. (DSMF ¶ 35; Benson Dep.

48:6–49:17.)

Robinson's dash cam captures the entire pursuit and ends with the aftermath of Bailey's

crash. The pursuit begins in earnest at around the 2:25 mark,[3] at which time Robinson spots

Brooke's car with its lights and siren activated. Robinson turns on his own lights and siren and

proceeds to follow Brooke's car. Robinson follows Brooke down a curving road and makes a

right at a three-way intersection. Both cars travel a block and make another right at a three-way

intersection. One officer indicates that Bailey is traveling the "wrong way" down the street.

Brooke and Robinson proceed straight two blocks and take a slight left. At the 2:54 mark,

another officer asks for Robinson's speed, which he states is "thirty-five [miles per hour]."

Brooke goes straight through the next intersection, while Robinson takes a left. Robinson

goes straight for one block and then turns right. Robinson continues straight for two blocks and

slows down at an intersection at the 3:10 mark. A second or two later, Bailey speeds through the

---

[3] The video begins at time "0:00." Robinson takes roughly two minutes and twenty-five seconds to arrive at the
Pub Deli.

intersection from right to left.  Robinson turns left and falls in behind him.  At all relevant times, Robinson's car is well behind the car Bailey is driving and never comes close to making contact with it.  At the 3:18 mark, Bailey's car hits what K.A. and Johnson testified to as the "bump."  Because Bailey is driving too fast, the "bump" sends sparks flying from the underside of the car and then sends the car out of control.  When the car crashes, neither Robinson nor Brooke's car is anywhere near it.  Robinson's car comes to a stop at the 3:33 mark.  Bailey's car, now significantly damaged and stationery, is clearly visible.  Robinson can be heard yelling "don't move . . . stop moving."  Other officers arrive on the scene at the 4:20 mark, and instruct the car's passengers to, among other things, put their hands up.[4]  The rest of the video records the lengthy process necessary to remove the occupants from the car.

K.A. and Johnson testified that police car(s) hit their car during the pursuit, which caused it to lose control and eventually crash.  (PSMF ¶¶ 19–21; DSMF ¶ 29; K.A. Dep. 58:2–60:2; Johnson Dep. 33:8–11.)  K.A. testified that Brooke drove a marked squad car, while Robinson drove an unmarked "Crown Vic"[5] car.  (K.A. Dep. 48:10–49:6.)  K.A. also testified that, although he did not see it, the Crown Vic hit Bailey's car, which caused Bailey to lose control, hit a "big bump" in the road and crash.  (K.A. Dep. 59:5–60:13.)  Johnson testified that a police car "bumped" Bailey's car "real hard," but did not clarify if it was Brooke's car, Robinson's car, or both.  (Johnson Dep. 33:5–11.)  According to Johnson, Bailey's car then hit a "little bump" and he was "done, like [presumably in reference to Johnson being knocked unconscious]."  (Johnson

---

[4]  K.A., who is African-American, also testified that after the crash three of the officers used a vile racial epithet when referring to him.  (K.A. Dep. 64:4–66:2.)  While some of the officers curse, primarily when approaching the car, with guns drawn, to get Bailey, K.A. and Johnson to stop moving, none of the officers are heard to refer to any of the car's occupants in racist or derogatory terms.

[5]  "Crown Vic" is shorthand for "Crown Victoria," a Ford sedan commonly used by police officers.

Dep. 33:12–22.)  Johnson later testified that police cars hit Bailey's car "like three times" after it hit the bump.  (Johnson Dep. 34:12–22, 40:10–16.)

Bailey was later charged with several violations of the Pennsylvania Crimes Code.  He pled guilty to aggravated assault by vehicle and fleeing or attempting to elude an officer, both third-degree felonies, and unauthorized use of a motor vehicle, a second-degree misdemeanor. (DSMF ¶ 36; Criminal Docket Sheet, ECF No. 24 at Ex. M.)

Norristown police officers are trained in vehicle operations at the police academy. (DSMF ¶ 39; Brooke Dep. 11:8–12:10; Robinson Dep. 26:15–19; Benson Dep. 22:23–23:20.) The municipality maintains a police pursuit policy as required by Pennsylvania law.  (75 Pa. Cons. Stat. § 6342.)  The policy permits pursuit after the commission of a felony or serious misdemeanor.  (PSMF ¶ 23; DSMF ¶¶ 40, 42; ECF No. 24 at Ex. O.)  Stealing a car is a felony under Pennsylvania law.  (DSMF ¶ 43; 18 Pa. Cons. Stat. § 3903.)  After each pursuit, the Department issues a written report and determines if there were any violations of policy and whether a review of the policy and/or discipline is necessary.  (DSMF ¶¶ 44–46; Benson Dep. 27:14–28:1; Pursuit Report, ECF No. 24 at Ex. P.)  The Department submits these reports to the Pennsylvania State Police.  (DSMF ¶ 47; Dillon Dep. 27:3–28:3, ECF No. 24 at Ex. N.)  Benson reviewed the pursuit in question and found no policy violation.  (DSMF ¶¶ 48–49; Benson Dep. 36:2–38:10; Pursuit Report.)  Additionally, Benson concluded that the pursuit was short in duration and not at a high rate of speed.  (DSMF ¶ 49; Benson Dep. 36:2–38:10, 62:5–15.)

## II.

Salima Hawthorne, on behalf of her minor son K.A., and Johnson (collectively "Plaintiffs"), filed a complaint in the Montgomery County Court of Common Pleas against the

Municipality of Norristown ("Norristown"), Ball[6] and Bailey.  (Compl. ¶¶ 4–6, ECF No. 1.) Norristown removed the complaint to this Court on March 27, 2015.  (Notice of Removal, ECF No. 1.)  The complaint alleges that the police chased the stolen car at a "high and dangerous rate of speed" endangering the community at large.  (Compl. ¶¶ 10–13.)  The complaint's most specific factual allegation is that:

> **Ultimately, a Norristown police vehicle struck the back of the vehicle driven by Bailey causing that vehicle to strike another vehicle and roll over in a catastrophic collision.**  Plaintiffs Ameer Johnson and K.A. suffered serious injuries including but not limited to head, brain, neck, back, arm, leg and other injuries, resulting in a lengthy hospitalizations, rehabilitation and surgeries, some or all of which may be permanent.

(Compl. ¶ 14) (emphasis added.)  Plaintiffs assert the following claims against Norristown:  (1) failure to train under 42 U.S.C. Section 1983; (2) substantive due process violation under the Fourteenth Amendment; (3) state-created danger under the Fourteenth Amendment; and (4) state law negligence.[7]  (Compl. ¶¶ 16–31.)

On November 12, 2015, Norristown filed a motion for summary judgment (Def.'s Mot., ECF No. 24) to which the Plaintiffs responded (Pls.' Resp., ECF No. 28).  The Court heard oral argument on January 20, 2016 and has carefully reviewed the record, including the dash cam video.  (Oral Arg., ECF No. 38.)  Stated legally, there is no evidence in the record which could enable a reasonable factfinder to conclude that Norristown deprived the Plaintiffs of any constitutional rights or that the municipality was negligent in any way.  Put another way, the dash cam video conclusively shows that the Plaintiffs' allegations are untrue.

---

[6] Plaintiffs stipulated to Ball's dismissal on April 30, 2015.  (ECF Nos. 9–10.)

[7] Plaintiffs also asserted a fifth count, "consortium," against Norristown, Ball and Bailey.  (Compl. ¶¶ 32–35.) Plaintiffs conceded this claim in their response to Norristown's summary judgment motion.  (Pls.' Resp. at 2 n.1, ECF No. 28.)  Since the consortium claim was the only one alleged against him, Bailey is no longer a defendant.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the plaintiff.  *Id.* at 252.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

When ruling on a motion for summary judgment, the Court may only rely on admissible evidence.  *See, e.g.*, *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 95 (3d Cir. 1999).  A Court must view the facts and draw all reasonable inferences in favor of the nonmoving party. *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

### III.

Generally, facts must be viewed in the light most favorable to the nonmoving party at summary judgment.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the United States Supreme Court in *Scott v. Harris*, 550 U.S. 372 (2007) held that where there is video evidence that contradicts the testimony of an opposing party, the court should not adopt the nonmoving party's facts over the clear video evidence to the contrary.  *Scott*, 550 U.S. at 380.

At issue in *Scott* was whether a law enforcement official can, consistent with the Fourth Amendment, "attempt to stop a fleeing motorist from continuing his public-endangering flight by ramming the motorist's car from behind." *Id.* at 374. Victor Harris ("Harris") initiated a high-speed car chase by fleeing a police officer who was attempting to pull him over for speeding. *Id.* at 374–75. Deputy Timothy Scott ("Scott") tried to end the chase by ramming Harris's car with his police cruiser. *Id.* at 375. Harris crashed and was rendered a quadriplegic. *Id.* He sued, alleging that Scott violated his Fourth Amendment rights by using excessive force. *Id.* at 375–76. Scott claimed qualified immunity as a government official acting in his official capacity, but the district court rejected his claim. *Id.* at 376.

The Eleventh Circuit Court of Appeals affirmed. The court stated that in order to show that a government official is not entitled to qualified immunity, a plaintiff is required to prove that the official violated a clearly established constitutional right. *Id.* The court reasoned that because there was no imminent threat—Harris remained in control of his car and the roads were relatively empty—Scott's use of deadly force was unconstitutional. *Id.* Although no appeals court had ruled on the specific question of the use of deadly force in a high-speed chase, the court ruled that such limits on deadly force were "clearly established." *Id.*

The Supreme Court reversed, holding that Scott's actions were reasonable under the Fourth Amendment. *Id.* at 386. The Court relied heavily on a videotape of the car chase, which it said contradicted Harris's claim that he was driving responsibly even while being pursued by the police. *Id.* at 378–81. The majority noted the absence of any "allegations or indications that [the] videotape was doctored or altered in any way" or "any contention that what it depicts differs from what actually happened." *Id.* at 378. The Court held that "it is clear from the videotape that [Harris] posed an actual and imminent threat to the lives of any pedestrians who

might have been present, to other civilian motorists, and to the officers involved in the chase." *Id.* at 384.  The Court also took into account Harris's culpability for starting the chase in the first place.  *Id.*

The Third Circuit Court of Appeals, consistent with *Scott*, has repeatedly held that courts should not adopt the nonmoving party's allegations over clear video evidence to the contrary. *See, e.g.*, *Smith v. Price*, 610 F. App'x 113, 115 (3d Cir. 2015) (affirming the district court in not accepting the nonmovant's recitation of the facts of the first incident as they blatantly contradicted the video evidence); *Fennell v. Cambria County Prison*, 607 F. App'x 145, 148 (3d Cir. 2015) (finding the district court properly relied on the videotape of alleged excessive force by an officer against a state prisoner in resolving any factual disputes); *McDowell v. Sheerer*, 374 F. App'x 288, 291 (3d Cir. 2010) (stating that where there are video recordings of the incident in question, the court need not adopt the nonmovant's version of the facts if the recording blatantly contradicts the nonmovant's story); *Tindell v. Beard*, 351 F. App'x 591, 595 (3d Cir. 2009) (depending on a videotape in assessing summary judgment evidence); *Green v. N.J. State Police*, 246 F. App'x 158, 159 n.1 (3d Cir. 2007) (relying on videotapes, where possible, to state the facts of the case).

There are no allegations or indications that the dash cam video from Robinson's car was doctored or altered in any way, "nor any contention that what it depicts differs from what actually happened."  *Scott*, 550 U.S. at 378.  The video clearly contradicts the complaint's allegations—and K.A. and Johnson's deposition testimony.  The video confirms, conclusively, that neither police car caused the stolen car to crash.  Contrary to K.A. and Johnson's testimony and the complaint's specific allegation, no police car struck Bailey's car, before or after the car hit the bump.  (Compl. ¶ 14; Pursuit Video; K.A. Dep. 58:2–60:2; Johnson Dep. 33:8–22, 34:12–

9

22, 40:10–16.)  The stolen car lost control and crashed after hitting the bump in the road while traveling at an excessive speed.

## IV.

Plaintiffs' failure to train claim under 42 U.S.C. Section 1983 evolved over the course of the litigation.  However the Plaintiffs may frame their claim under *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658 (1978), it cannot survive summary judgment.  Plaintiffs cite 75 Pa. Cons. Stat. § 6342, which states that "[e]ach police department shall develop and implement a written emergency vehicle response policy governing the procedures under which a police officer should initiate, continue, and terminate a motor vehicle pursuit."  (Compl. ¶ 17.) Plaintiffs allege that "Norristown failed to create such a policy."  (Compl. ¶ 18.)

Without amending its complaint, Plaintiffs came to acknowledge that Norristown in fact had such a policy, but in an effort to stave off summary judgment disputed "whether or not the policy and the training provided thereunder are sufficient and whether Norristown Police followed the policy in the first place."  (Pls.' Resp. at 14.)

Plaintiffs altered their claim one last time during oral argument on Norristown's motion. Plaintiffs there argued that Norristown's policy is unconstitutional because it allows the pursuit of stolen vehicles.  (Oral Arg. 71:18–21.)  Plaintiffs also maintain a failure to train claim for allowing police officers to ram vehicles, which violates the policy.  (Oral Arg. 53:10–15.)

## A.

To establish a *Monell* claim, a plaintiff must point to a local government's "policy or custom" that caused a deprivation of the plaintiff's constitutional rights.  *Monell*, 436 U.S. at 694.  A "policy" is a "statement, ordinance, regulation or decision officially adopted and promulgated by those whose edicts or acts may fairly be said to represent official policy."  *Id.* at

690; *see also Simmons v. City of Philadelphia*, 947 F.2d 1042, 1059 (3d Cir. 1991).  A "custom" is not "authorized by written law," but is so "permanent and well settled" that it constitutes a custom or usage "with the force of law."  *Monell*, 436 U.S. at 690; *see also Simmons*, 947 F.2d at 1059.  The plaintiff must:  "[I]dentify the constitutional right at issue, identify the policy or custom at issue, identify the policymaker, demonstrate deliberate indifference or evidence of knowledge and acquiescence by the policymaker and demonstrate causation."  *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 342 (E.D. Pa. 2006).  Negligence on the part of local government officials is not enough to impute liability under Section 1983.  *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir. 1990).

There is no record evidence that Norristown violated any of the Plaintiffs' constitutional rights.  Norristown has a pursuit policy as required by Pennsylvania law.  75 Pa. Cons. Stat. § 6342.  That policy allows officers to pursue cars after the commission of a felony or serious misdemeanor.  The act of stealing a car is a felony under the Pennsylvania Crime Code.  18 Pa. Cons. Stat. § 3903.  There is no evidence that any police officers violated that policy or that the policy itself caused a constitutional injury.  The dash cam video of course confirms all of this.

Municipal liability may only be based on a failure to train when it amounts to deliberate indifference to the rights of the municipality's residents and actually causes a constitutional injury.  *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005).  Failure to adequately train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations.  *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407–09 (1997).  Without a pattern of past violations, Plaintiffs must show "both contemporaneous knowledge of the offending incident . . . and circumstances under which [a municipal]

supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998).

The only evidence Plaintiffs proffer of a "pattern of past violations" is an email from a Norristown employee that lists the number of police pursuits from 2010 to 2015. (Pursuit Statistics, ECF No. 28 at Ex. A.)  The email falls well short of establishing any kind of a pattern of constitutional violations. (*Id.*)  The only testimony on this document is that of Norristown's Rule 30(b)(6) designee Lieutenant Todd Dillon ("Dillon"). (Dillon Dep. 27:7–17.)  Dillon testified that the email contains pursuit statistics from 2010 to 2015, in addition to how many of those pursuits "involved some type of collision." (*Id.*)  His testimony provides no evidence of a pattern of violations.

Plaintiffs' second count alleges a substantive due process violation under the Fourteenth Amendment.  They contend that "[i]n pursuing the [stolen car] in the manner [Norristown] did, [it] acted with reckless and callous disregard to the Plaintiffs' [Fourteenth] Amendment substantive due process rights." (Compl. ¶ 21.)  Plaintiffs' substantive due process claim fails for the same reason as their prior *Monell* claims fail.

## B.

In Count III of their complaint, Plaintiffs seek to hold Norristown liable under the state-created danger theory, which evolved out of the Supreme Court of the United States's decision in *Deshaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189 (1989).  In *Deshaney*, the Court recognized that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196.  The Court, however, acknowledged a "special relationship" exception to this general rule where "the State

12

takes a person into its custody and holds him there against his will." *Id.* at 199–200.  Under the

facts before it, the majority concluded, "[w]hile the State may have been aware of the dangers

that [plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to

render him any more vulnerable to them." *Id.* at 201.

Several courts, including the Third Circuit Court of Appeals, seized on this statement to

formulate a second exception to the general rule that the state has no affirmative duty to protect

citizens from private injury:  the state-created danger theory. *See M.U. v. Downingtown High

Sch. E.*, 103 F. Supp. 3d 612, 620 (E.D. Pa. 2015).  The Third Circuit adopted this theory as a

"viable mechanism for establishing a constitutional violation under 42 U.S.C. § 1983" in *Kneipp

v. Tedder*, 95 F.3d 1199, 1201 (3d Cir. 1996).

As currently applied in the Third Circuit, plaintiffs are required to satisfy four elements to

state a viable claim under the state-created danger theory:  (1) the harm ultimately caused was

foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the

conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff

was a foreseeable victim of the defendant's acts or a member of a discrete class of persons

subjected to the potential harm brought about by the state's actions as opposed to a member of

the public in general; and (4) a state actor affirmatively used his or her authority in a way that

created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the

state not acted at all. *See Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006)

(citations omitted) (internal quotation marks omitted).

Plaintiffs' counsel asserted that the officers' "ramming" of the car in which his clients

were riding was **the** disputed issue of material fact precluding summary judgment on the state-

created danger claim.  (Oral Arg. 88:14–19.)  Since the dash cam video establishes that neither

police car came close to touching, much less "ramming" the car driven by Bailey, this claim is easily dismissed. Even without the video, the state-created danger theory does not apply to the facts of this case. The Court need not address the Plaintiffs' obvious failure to meet the elements of the claim except to say that there do not seem to be any judicial decisions allowing a claim to proceed under the state-created danger theory in the context of a police pursuit. In any event, the Court would certainly not expand the state-created danger theory to provide an avenue of recovery for the driver of a stolen car who, by disobeying a lawful command from a police officer, necessitates a pursuit.

## C.

Pursuant to 28 U.S.C. Section 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over state law claims once all claims over which the Court has original jurisdiction have been dismissed. In such a situation, it is appropriate to refrain from exercising jurisdiction over the state law claims "in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1967). Here, the meritless claims against Norristown constitute extraordinary circumstances which make it appropriate for the Court to address—and dismiss with prejudice—the state law claims so that Norristown does not have to endure them in any other forum.

In Count IV of the complaint, Plaintiffs assert that Norristown is liable for the alleged negligence of its officers. The Pennsylvania Political Subdivision Tort Claims Act ("the Act") provides municipalities with general immunity from tort liability. 42 Pa. Cons. Stat. § 8541, *et seq*. Pursuant to the Act, an injured party may recover in tort from a local agency if: (1) the damages would be otherwise recoverable under common law or statute creating a cause of action if the injury were caused by a person not having available a defense under 42 Pa. Cons. Stat. §

14

8541; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one or more of the eight enumerated categories of exceptions to immunity.  42 Pa. Cons. Stat. § 8542(a); *see also Lindstrom v. City of Corry*, 763 A.2d 394, 397 (Pa. 2000); *Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 2000) (citing *Kiley v. City of Philadelphia*, 645 A.2d 184, 185–86 (Pa. 1994)).

The eight exceptions are for:  (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals.  42 Pa. Cons. Stat. § 8542.  These exceptions must be narrowly construed, given the legislative intent to insulate local governments from tort liability.  *See, e.g.*, *Lockwood*, 751 A.2d at 1140; *Snyder v. Harmon*, 562 A.2d 307, 312 (Pa. 1989); *Love v. City of Philadelphia*, 543 A.2d 531, 532 (Pa. 1988).  Plaintiffs seek to invoke the vehicle liability exception, which states:

> The operation of any motor vehicle in the possession or control of the local agency, **provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer** or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer.  As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa. Cons. Stat. § 8542(b)(1) (emphasis added).  At oral argument, Plantiffs' counsel contended that the exception applies because K.A. and Johnson were not "in flight or fleeing apprehension or resisting arrest," as they were neither "arrested" nor were they "found to have violated any laws."  (Oral Arg. 81:11–17.)  Since the video confirms that none of the officers were negligent, the Court need not address whether or not this exception applies.

**V.**

The Plaintiffs filed their complaint in Montgomery County on January 27, 2015.  For the past year, Norristown has been defending itself.  Police officers have been taken away from performing their duties to answer discovery requests and prepare for and sit in depositions "explaining" their actions, all the while knowing the allegations against them were bogus.  The Court has expended significant time and judicial resources which otherwise could have and should have been devoted to legitimate cases.  This case has sullied the civil justice system for long enough.  Norristown's motion is granted and the case is dismissed.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

16