## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SALIMA HAWTHORNE, *et al*** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 15-1572 GJP** |
| **MUNICIPALITY OF NORRISTOWN** | : | |
| **Defendant** | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## RESPONSE OF GREGG D. ZEFF
## <u>TO DEFENDANT'S MOTION FOR SANCTIONS</u>

Alan B. Epstein, Esquire (2346)
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19147
(215) 241-8832
(215) 531-9103
aepstein@lawsgr.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

I.      INTRODUCTION...............................................................1

II.     PROCEDURAL HISTORY.....................................................1

III.    STATEMENT OF RELEVANT UNDERLYING FACTS.........................3

    A.      The Incident Giving Rise to This Litigation.........................3

    B.      Pre-Complaint Investigation.........................................5

    C.      Further Review and Discovery.......................................6

    D.      Summary Judgment...................................................8

    E.      Oral Argument........................................................9

    F.      Settlement Offer.....................................................13

III.    DISCUSSION.................................................................13

    A.      The General Principles Governing The Provisions
        of 28 U.S.C. §1927 Disallow The Imposition Of
        Sanctions Against Plaintiff's Attorney Gregg L. Zeff...............13

    B.      Attorney For Plaintiffs Gregg D. Zeff Did Not Vexatiously
        Multiply Proceedings In The Present Matter Or Engage In
        Willful Bad Faith....................................................20

    C.      The Monetary Sanctions Sought By The Defendant
        Are Neither Reasonable Or In Keeping With The
        Actions Of Gregg L. Zeff.............................................21

    D.      The Burden Of Paying The Sums Requested Must Be
        Considered In Setting Any Sanctions.................................24

IV.     CONCLUSION................................................................25

# TABLE OF AUTHORITIES

## Cases

*Advance Business Systems and Supply Co. v. SCM Corp.,*
287 F.Supp. 143 (D.Md. 1968, *cert. denied 397 U.S. 920 (1970*.................24

*Baker Indust., Inc. v. Cerebus Ltd.,*
764 F.2d 204 (3d Cir. 1985)...................................................14, 15, 16, 17

*Barbee v. Southeastern Pennsylvania Transportation Authority,*
Civ. A. No. 04-4063, 2007 U.S. Dist. LEXIS 7317
(E.D. Pa. February 1, 2007)...................................................................18

*Boykin v. Bloomsburg Univ.,*
905 F.Supp. 1335 (M.D.Pa. 1995).........................................................19

*Doering v. Union County Bd. Of Chosen Freeholders,*
857 F.2d 191 (3d Cir. 1988).................................................................24

*Dowdell v. City of Apopka, Florida,*
521 F.Supp. 297 (M.D.Fla. 1981).........................................................24

*Ford v. Temple Hosp.,*
790 F.2d 342 (3d Cir. 1986).................................................................19

*Fox v. Vice,*
563 U.S. 826, 131 S.Ct. 2205 (2011)....................................................13

*Hackman v. Valley Fair,*
932 F.2d 239 (3d Cir. 1991).................................................................15

*Goostree v. State of Tennessee,*
796 F.2d 854 (6th Cir. 1986)............................................................23-24

*In re Orthopedic Bone Screw Prods.,*
193 F.3d 781 (3d Cir. 1999).................................................................14

*Jones v. Pittsburgh National Corp.,*
899 F.2d 1350 (3d Cir. 1990)...............................................................24

*LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC,*
287 F.3d 279 (3d Cir. 2002)..........................................................14, 15, 16

*Maule v. Philadelphia Meeting Holdings, LLC, et al.,*
Civ. A. No. 08-3357, 2009 U.S. Dist. LEXIS 3569
(E.D. Pa. January 16, 2009)...........................................................18, 19

*Mazzone v. Grant Wilfley Casting,*
Civ. A. No. 05-2267, 2008 U.S. Dist. LEXIS 32602 *4
(D.N.J. April 21, 2008)...............................................................15, 16, 17

*Mone v. Comm'r of Internal Revenue,*
774 F.2d 570 (2d Cir.
1985).............................................................................................17

*Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.,*
339 F.3d 180 (3d Cir. 2003)....................................................................16

*Pauza v. The Standard Group, Inc.,*
Civ. A. No. 06-2608, 2009 U.S. Dist. LEXIS 89913 *4-5
(D.N.J. September 28, 2009)..............................................................16, 19

*Prudential Insurance v. America Sales Practice,*
278 F.3d 175 (3d Cir. 2002)....................................................14, 15, 17, 18

*Victoria Insurance Company v. Li He Ren, et al.,*
Civ. A. No. 08-517, 2008 U.S. Dist. LEXIS 93798 *5
(E.D. Pa. November 10, 2008)...................................................................17

*Williams v. Giant Eagle Mkts., Inc.,*
883 F.2d 1184 (3d Cir. 1989)............................................................14, 19

## **Statute**

Fed. R. Civ. Proc. 54(d)(1)........................................................................23

28 U.S.C. § 1920.......................................................................................23

28 U.S.C. § 1927..............................................................1, 13, 15, 18, 21, 23

42 U.S.C. § 1983.........................................................................................1

## I.    INTRODUCTION

The Defendant Municipality of Norristown, at the Court's suggestion, Has filed a somewhat perfunctory Motion for Sanctions pursuant to the provisions of 28 U.S.C. §1927 requesting that its insurer be repaid for all fees and costs by Plaintiffs' attorney Gregg L. Zeff for sums expended in defense of Plaintiffs' claims since the inception of the first depositions taken by either party on July 21, 2016. For the reasons set forth hereinafter, it is respectfully suggested that the actions of Mr. Zeff were not affected in willful or bad faith or with the intent to unreasonably and vexatiously multiply the proceedings and sanctions should not be imposed.

## II.    PROCEDURAL HISTORY

On March 12, 2015, Plaintiffs filed their claims in the Montgomery County Court of Common Pleas against *inter alia* the Municipality of Norristown (the "Defendant", the "Municipality" or "Norristown"), including: causes of action against the Municipality arising under the provisions of 42 U.S.C. §1983 relating to failure of the Municipality to properly train its police officers, violations of the Plaintiff's rights to substantive due process, and injuries arising from state-created dangers leading to the serious injuries suffered by the two young Plaintiffs; state-based causes of action arising from the averred negligent of the  negligence of the Norristown police officers; and a loss of consortium posited by the boy's mother, Salima Hawthorne.  The case was subsequently removed to this Court, on March 27, 2015 based upon federal jurisdiction conferred by the claims proffered under the federal statute.

*See* Civil Case Docket No. (hereinafter "Dkt. NO. _") 1.  An answer to the
Complaint was filed by the Municipality on April 9, 2015. [Dkt. No. 4].

Following the Initial Pretrial Conference on May 29, 2015 [Dkt. No. 12],
the Court entered a scheduling Order [Dkt. No. 13], and discovery, including
the exchange of written discovery and the taking of deposition testimony of the
two injured Plaintiff's and Norristown Police Officers, ensued.

After completion of discovery and a settlement discussions before the
Honorable Magistrate Judge Linda K. Caracappa during the month of October
2016, the Municipality filed a Motion for Summary Judgment [Dkt. No. 24], the
response to which was filed on December 14, 2015 [Dkt. No. 28].  Oral
argument convened on that Motion on January 19, 2016.  *See* Transcript of
Proceedings attached as Exhibit "A". [Dkt. No. 39]

The Court then held a Telephone Conference with counsel on February 2,
2016 [Dkt. No. 41], during which it announced its decision to grant
Defendant's Motion.  The Court then formally issued its Order and supporting
Memorandum granting summary judgment on February 5, 2016 [Dkt. Nos. 42,
43].

Also on February 5, 2016 the Court issued an Order to Show Cause why
sanctions were "not appropriate pursuant to: Federal Rule of Civil Procedure
11(b)(1)-(3), 28 U.S.C. §1927 and/or the Court's inherent powers."  Counsel for
Plaintiffs, Gregg L. Zeff, submitted a Response to the Order to Show Cause and
a hearing on the issues raised by the Court's Order and Mr. Zeff's written
Response was held on February 24, 2016.  *See* Transcript of those Proceedings

attached as Exhibit "B". At the conclusion of the the Court invited counsel for the defense to file "the motion you deem appropriate under Rule 11 with whatever materials go with that," allowing counsel to respond thereafter.  Exh. B at p. 43.

On February 26, 2016, the Municipality of Norristown filed a Motion for Sanctions based solely on the provisions of 42 U.S.C. §1927 and unsupported by Verification or Affidavit requesting an Order be entered requiring "Plaintiffs' counsel Gregg L. Zeff, Esquire pay $74,588.89 to [non-party] the Municipality of Norristown's insurance carrier for attorneys, costs and expert fees incurred in defending the claims raised in Plaintiffs' Complaint.

### III.    STATEMENT OF RELEVANT UNDERLYING FACTS

#### A.    The Incident Giving Rise to This Litigation

On the evening of November 9 2013, at approximately 11 pm, Plaintiffs K.A. and Johnson (collectively "Plaintiffs"), left their home, and began walking to the Pub Deli in Norristown, approximately four blocks away.  Exhibit I to Defendant's Motion for Summary Judgment (hereinafter "Motion Exh. __") at 29:20-30:2 and Motion Exh. K at 19:23. While walking en route to the deli, Daquan Bailey, pulled over in a black Nissan and offered Plaintiffs a ride the rest of the way to the deli, an offer which Plaintiffs accepted. Motion Exh. I at 32:16-33:1 and Motion Exh. K at 21:21-22:12.; Motion Exh. I at 37:14-24 and Motion Exh. K at 22:13-14. As Bailey pulled up to deli and Plaintiffs were about to exit the vehicle, Bailey noticed police lights and sirens behind the vehicle, ordered the car door to be closed, and sped away from the police. Motion Exh.

K at 28:14-18; Motion Exh. K at 28:19-29:20.  Unbeknownst to Plaintiffs at this time, the vehicle in which Bailey was driving them had been reported stolen by its owner to the Norristown Police.  Motion Exh. I at 38:1-13 and Motion Exh. K at 62:14-17.

Corporal David Brooke, of the Norristown Police Department then initiated a pursuit of Bailey's vehicle, in which Plaintiffs were the passengers. Motion Exh. G at 40:12-24; 41:13-18. 15. Corporal Brooke's vehicle was not outfitted with a dashboard camera (hereinafter "dash cam"). Motion Exh. G at 27:12-16. Upon receiving news of the pursuit, Norristown Officer, Carl Robinson, left the station, and joined Corporal Brooke in the pursuit.  Motion Exh. H at 8:6-12 17. Officer Robinson's vehicle was outfitted with a dash cam that recorded the portions of Corporal Brooke's pursuit. Motion Exh. J.  Since Officer Robinson joined in the pursuit, after it was already initiated by Corporal Brooke, the dash cam video did not show the entirety of the pursuit. Motion Exh. J.

However, the video did reflect the end of the pursuit, resulting in the catastrophic collision of Bailey's vehicle with others after the driver lost apparent control when the vehicle hit a dip in the road. Motion Exh. J; Motion Exh. I at 62:12-63:8. Plaintiffs each testified that during the chase a Norristown police car struck the Bailey vehicle as many as three times.  Motion Exh. I at 57:20-58:10; 58:20-59:4; 59:12-59:15 20; Motion Exh. K at 33:23-34:18; 39:23-40:1; 40:10-12.

4

*See* Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment [Dkt. No. 28] wherein Plaintiffs' argued that material issues of fact remained in spite of the video evidence that did not demonstrate a striking immediately before the accident:

> While the dash cam provides a low-quality video that may suggest that Officer Robinson may not have struck the stolen vehicle, Norristown completely glosses over the fact that Officer Robinson was not the only officer giving chase and that his dash cam quite simply did not catch the entire chase on film.

Id. at p. 11.  See also Exhibit 1 thereto, Counter Statement of Facts, at ¶¶ 15-20.

### B.      Pre-Complaint Investigation

Plaintiffs retained Mr. Zeff's law firm on November 19, 2013, ten days after the incident, during which they sustained life threatening and permanent injuries. Zeff Affidavit, Exhibit C, Paragraph 5 (hereinafter "Zeff. Aff. at ¶___"). During their account of the incident, the two Plaintiff witnesses advised Mr. Zeff that during the chase one of the Norristown police cars struck the vehicle in which they were passengers prior to the accident that caused their injuries. *Id. at* ¶ 6   Mr. Zeff retained a private investigator to undertake a full review of the occurrence on December 4, 2013. *Id. at* ¶ 7   The assigned investigator provided a written reports stating a witness "heard what sounded like two vehicles traveling at a high rate of speed on Wood Street," an additional witness account of a man who "was parked approximately 30 feet from the stop sign when he saw a four door sedan fly past his vehicle on DeKalb Street...[and] two

5

marked patrol vehicles behind it.  All three were traveling at a very high rate of speed." *Id.*

### C.    **Further Review and Discovery**

Following the institution of the suit, Mr. Zeff propounded written discovery between the parties from March-May 2015, including *inter alia* interrogatories inquiring into Defendant's pursuit policies employed in chasing felony suspects.  In keeping with the inquiry into the basis for a successful cause of action relating to policies and training issues and the creation of a state-created danger, Mr. Zeff also consulted with a well known expert in the field of police policies relating to high speed chases who had previously assisted in drafting Philadelphia Police Department's pursuit policy.  That expert provided guidance in what facts that should be pursued during the discovery process in relation to Norristown's pursuit policy and safety factors that relate to the creation of danger in high speed chases.  Zeff. Aff. at ¶ 8.

Sometime following the receipt of a disk containing the recording of the chase made by the dash cam installed in Officer Robinson's vehicle and before the depositions of the Plaintiff's took place, Mr. Zeff reviewed the video and discussed its content with his clients.  In preparation for the depositions of his clients on July 21, 2015, he viewed the video made by the dash cam in the police car driven by Officer Robinson and discussed it with my clients.  They continued to insist that during the chase the police vehicle struck the rear of the Bailey vehicle (Johnson insisted that had occurred three times).  Since Mr. Zeff had not yet undertaken the depositions of the police officers to determine

whether other videos from other police cars were available for viewing or, even if not, whether any other police vehicle had struck the car, he continued to explore the facts of the chase and possible other legal theories through depositions of police policy makers and other officers involved in the incidents giving rise to the Complaint that concluded in September.   *Id.* at ¶10.

K.A.'s deposition occurred on July 21, 2015, and Johnson's occurred on September 1, 2015.  Both K.A. and Johnson testified that Norristown Police struck Bailey's vehicle in an attempt to bring the police chase to a close. Mot. Exh. I at 57:20-58:10; 58:20-59:4; 59:12-59:15 20; Motion Exh. K at 33:23-34:18; 39:23-40:1; 40:10-12.

The Officers' depositions occurred on August 11, 2015, and September 1, 2015. On August 11, 2015, various police officers were deposed, regarding their role in the incident, and their knowledge of Norristown's pursuit policy. Corporal Joseph Benson, the supervisor in charge during the pursuit, was deposed on topics including, but not limited to: the frequency of stolen car reports in Norristown, how stolen car reports are investigated, his training in vehicle pursuits, training and implementation of the pursuit policy, his actions upon arriving at the accident scene, and the feedback from the department regarding how the pursuit was handled.  Motion Exh. No. L.

On August 11, 2015, Lieutenant Todd Dillon, as a 30(b)(6) corporate designee, was deposed regarding the evolution of Norristown's pursuit policy, including the revisions made, the reasoning behind the revisions, and the incidences of constitutional violations arising from Norristown vehicle pursuits.

Chief Tallbottom was deposed also as a 30(b)(6) corporate designee, regarding whether Norristown's vehicle pursuit policies are comparable to other municipalities of its size, population, and density and Corporal David Brooke was deposed on topics including, but not limited to, his involvement in the pursuit, as well as his general training in vehicle pursuits.

Corporal Brooke also provided insight during his deposition, into why his vehicle was not equipped with a dash cam, while also testifying that other vehicles had defective cameras, and that a third of the fleet were not equipped with cameras, thereby explaining why his car did not record his part in the chase.  (Deposition of Cpl. Brooke at 27:4-39:23).

### D.   Summary Judgment

Defendants filed their Motion for Summary Judgment on November 12, 2015, months after the dash cam video was produced, and months after depositions concluded. Their motion sought to dismiss all of Plaintiffs' claims[1], and concluded with the following statement:

> As argued above, Plaintiffs' federal and state claims should be dismissed with prejudice.   There is no evidence of an underlying Constitutional violation or evidence to establish that the Municipality of Norristown failed to train or supervise its officers or had an inappropriate policy or custom that violated Plaintiffs' rights.   Likewise, there was no negligence by the Municipality in the operation of the motor vehicles nor did Norristown owe any duty to Plaintiffs who were passengers in a fleeing stolen vehicle.   As a matter of law, Plaintiffs' claims should be dismissed with prejudice.

(Defendants' Memorandum in Support of Motion for Summary Judgment [Dkt. No. 24] at p. 23. While Defendants' Statement of Material Facts states that the

"[r]eview of the police dash cam video of the pursuit clearly demonstrates that no police vehicle touched the stolen vehicle as it attempted to allude the officers in pursuit" [¶ 30] and "that Bailey lost control of the stolen vehicle as he crossed the intersection," little argument was made in the accompanying Memorandum suggesting that issue as dispositive of the case. Memorandum at pp.13-14.  In fact, the 23 page Memorandum supporting the Defendant's request for summary disposition discussed in detail the legal arguments made by Plaintiffs regarding the failure to train or supervise, the issue of state-created danger and the averred negligence of the police in maintaining the high speed chase in light of the circumstances.

On December 28, 2015, Mr. Zeff sent Plaintiffs a letter, enclosing the Motion for Summary Judgment, and the Response. In the letter, he explained to his that their claims would be difficult to sustain.  Again on January 13, 2016, Mr. Zeff  sent his clients a second letter requesting their permission to end the case without a recovery because of his fears that the claim would not successfully withstand the scrutiny of review by the Court on summary judgment or the review of the facts by a jury. Zeff. Aff. at ¶ 12. The clients did not provide this authorization in time for oral argument.

### E.    Oral Argument

In keeping with the lack of guidance from his clients, during the oral argument on the Motion for Summary Judgment just six days later on January 19, 2016, Zeff speculated what the Court could resolve upon its view of the dash cam video in suggestions that in substance were far less assuring or

argumentative than the Court later suggested in its Memorandum or Order to

Show Cause:

> MR ZEFF:  You're going to see a car that is being chased. Your going to see them lose sight of the car and then you're going to see them pick it up again. So, there is a point in the video where there could have been a ramming without anybody knowing it.  However, you're going to see and I'm going to submit to you that it's not clear enough without testimony.

> THE COURT:   Okay.

> MR. ZEFF:  You are going to see the police car stop at -- there's one major intersection. You're going to see the police car stop at the intersection and you're going to  see the vehicle with Bailey and my clients in it, slow down, almost stop and then go through the intersection and then  have the collision.

> THE COURT:   Okay.

> MR. ZEFF:   I submit to you, your Honor, that there may have been a ram, there may not have been a ram, but I don't think it's clear.

> THE COURT:  Okay.

> MR. ZEFF:   Okay and if your Honor thinks it's clear, then the case –

> THE COURT:   Well –

> MR. ZEFF:   -- the case is over at that point, in essence.

> THE COURT:   Okay.

> MR. ZEFF:   And if your Honor

> THE COURT:   You're willing to take the case to trial in the presence of that video?

> MR. ZEFF:   I have no choice, I believe the video is going to come in, although I may come up with an argument to keep it out later. I don't think it's going to work, but I've been working on that. But yeah, I believe, your Honor, that the case is going

to rise and fall, first, on your Honor's interpretation as to whether or not a jury can look at this video and come to any other conclusion.

THE COURT:   Well and presumably, the video will be accompanied by the testimony of the officers?

MR. ZEFF:   That's correct.

THE COURT:   And it will be augmented by the testimony of your clients?

MR. ZEFF:   Yes.

THE COURT:   And the jury's going to pick who to believe?

MR. ZEFF:   That's our position.

THE COURT:   So, isn't it safer for me to just let  the jury tell that?

MR. ZEFF:   Yes.

THE COURT:   To the extent any of this gets to the jury?

MR. ZEFF:   And to the extent it gets to the jury, that is exactly right. But Scott would tell you that if  you're crystal clear, if your mind is made up, no reasonable  jury –

THE COURT:  No reasonable jury

MR. ZEFF:   -- could see anything other than

THE COURT:   Okay.

MR. ZEFF:   -- then your Honor can't let it go to a  jury and we submit that Scott tells you that in this case, it  should go to a jury based on whether or not there was a  ramming incident of some kind.

THE COURT:   And obviously and this would be first rodeo with –

MR. ZEFF:   Mm-hmm.

THE COURT:   -- respect to viewing a video in evidence. I obviously have to watch the video and you both  want me to watch the video –

MR. ZEFF:  We do.

THE COURT:   -- to determine -- okay. Okay.

MR. ZEFF:   We do and in watching the video, if  you've got no questions, I submit the case is over and if you  look at –

THE COURT:   Well, I think I just have to make the determination as a matter of law, right, that no reasonable juror could believe your client's testimony in light of the video?

MR. ZEFF:  Yes.

THE COURT:   Okay, fair enough.

MR. ZEFF:   And I think that's the only fair way to go about doing it.

THE COURT:   All right.

MR. ZEFF:   And my point being, when you look at it, if you have questions that you -- if you'd like to ask the officer a question or my client a question about the video, I  submit it should go to the jury.

THE COURT:   Well, yeah, if I need –

MR. ZEFF:   That's it.

THE COURT:   -- if I need to take testimony on it?

MR. ZEFF:  Yes.

THE COURT:   Then I agree with you, whether that's a different way to cite the Scott standard or not, I agree with you. I mean, if I look at it and I need testimony to help me decide, then I'm not going to be the one deciding, put it that way. Okay.

(61:3-64:20)

12

**F.     Settlement Offer**

Following oral argument, Mr. Zeff received a call from the representative of Travelers Insurance Company, the Defendant's insurer, offering the sum of $10,000.00 in full and final settlement of the claim.  Before a response to that offer could be made with approval of the Plaintiff's, the Court advised of its decision to grant summary disposition in favor of the Municipality. Zeff Aff. at ¶ 13.

**III.   DISCUSSION**

In summary of the legal principle reflected in the following discussion, it is respectfully asserted that the award of any sanction pursuant to the provisions of 28 U.S.C. §1927 or in accordance with the inherent powers of the court to sanction attorneys is simply not warranted against attorney for Plaintiff Gregg D. Zeff who did not vexatiously multiply proceedings in the present matter or engage in willful bad faith or engage in abusive actions so as to trigger a sanction issued under the inherent powers of the Court.

**A.     The General Principles Governing The Provisions
of 28 U.S.C. §1927 Disallow The Imposition Of Sanctions
Against Plaintiff's Attorney Gregg L. Zeff**

Our legal system, as a general rule, "requires each party to bear his own litigation expenses ... regardless whether he wins or loses." *Fox v. Vice,* 563 U.S. 826,  131 S.Ct. 2205, 2213 (2011). An exception to that rule exists under the provisions of 28 U.S.C. Section 1927.

Pursuant to the provisions of Section 1927, a court is authorized to impose cost and fee sanctions against an attorney for unreasonable and

vexatious conduct that multiplies the costs and length of legal proceedings.
*Baker Indust., Inc. v. Cerebus Ltd.,* 764 F.2d 204, 208 (3d Cir. 1985).  The
statute upon which the Defendant solely bases its plea for the imposition of
sanctions specifically provides that:

> Any attorney or other person admitted to conduct
> cases in any court of the United States or any
> Territory thereof who so multiplies the proceedings in
> any case unreasonably and vexatiously may be
> required by the court to satisfy personally the excess
> costs, expenses and attorneys' fees reasonably
> incurred because of such conduct.

28 U.S.C. § 1927.

While the determination whether to grant attorneys' fees and costs under
Section 1927 is a matter within the discretion of the trial court [*In re
Orthopedic Bone Screw Prods.*, 193 F.3d 781, 795 (3d Cir. 1999)], Section
1927 liability is limited to "instances of a serious and studied disregard for the
orderly process of justice." *Williams v. Giant Eagle Mkts., Inc.*, 883 F.2d 1184,
1191 (3d Cir. 1989)(internal citation and quotation omitted).

In order to state a claim for Section 1927 sanctions, the moving party
must establish each of the following elements: "(1) the attorney has multiplied
proceedings; (2) in an unreasonable and vexatious manner; (3) thereby
increasing the costs of the proceedings; and (4) doing so in bad faith or by
intentional misconduct." *LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC,*
287 F.3d 279, 288 (3d Cir. 2002); *Prudential Insurance v. America Sales
Practice,* 278 F.3d 175, 188 (3d Cir. 2002)..  The element of bad faith is a

mandatory prerequisite to imposing sanctions under the provisions in the statute. *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991). Specifically, it is well settled that a court must find willful bad faith on the part of the offending lawyer in order to impose  sanctions pursuant to §1927. *LaSalle National Bank v. First Connecticut Holding Group*, LLC, XXIII, 287 F.3d at 289. *See also Baker Indust.,* 764 F.2d at 208 (the conduct of the attorney giving rise to sanctions ". . . must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation."). The bad faith requirement is intended "to avoid chilling an attorney's legitimate ethical obligation to represent his client zealously..." *Id.* at 208.  Notably, a court must find evidence of "willful bad faith on the part of the offending attorney" by identifying "conduct ... of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." <u>Id.</u> at 208–09 (internal citation omitted). A finding that "counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal" will not suffice. *LaSalle Nat'l Bank*, 287 F.3d at 289. "Willful bad faith is demonstrated by 'findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing this suit was for an improper purpose such as harassment.'" *Mazzone v. Grant Wilfley Casting*, Civ. A. No. 05-2267, 2008 U.S. Dist. LEXIS 32602 *4 (D.N.J. April 21, 2008) (*quoting Prudential Insurance v. America Sales Practice*, 278 F.3d at 188).  Accordingly, sanctions should not be imposed under §1927 when the attorneys' conduct was a result of ".  .  . misunderstanding, bad

judgment, or well-intentions." *LaSalle National Bank*, 287 F.3d at 288 (*citing Mazzone v. Grant Wilfley Casting*, Civ. A. No. 05-2267, 2008 U.S. Dist. LEXIS 32602 *4 (D.N.J. April 21, 2008), 103 F.3d 294, 297 (3d Cir. 1996)).  As the District Court of New Jersey recognized in *Pauza v. The Standard Group, Inc.*, Civ. A. No. 06-2608, 2009 U.S. Dist. LEXIS 89913 **4-5 (D.N.J. September 28, 2009):

> This bad faith requirement is seen necessary to avoid chilling an attorneys' legitimate ethical obligation to represent his client zealously. . . If it were otherwise, an attorney who might be guilty of no more than a mistake in professional judgment in pursuing a client's goals might be made liable for excess attorneys' fees under Section 1927.

*Pauza*, 2009 U.S. Dist. LEXIS 89913 **4-5 (*quoting Baker Indus. Inc.*, 764 F.2d at 208-209).

Thus, the Third Circuit has consistently recognized that a sanction against an attorney is an act with far reaching repercussions and should be exercised with restraint.  *See, e.g., Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3d Cir. 2003) (any sanctions imposed on an attorney is a matter of serious concern that extends well beyond the monetary issues involved).  *See also LaSalle Nat'l Bank*, 287 F.3d at 288-89 ("[c]ourts should exercise [this sanctioning power] only in instances of serious and steady disregard for the orderly process of justice"); *Baker Indust.*, 764 F.2d at 208 (the "power to assess the fees against an attorney should be exercised with restraint lest the prospect thereof chill the ardor of proper and forceful advocacy on behalf of his client.").  This constraint on the district court's

discretion is imposed because the power to sanction "carries with it the potential for abuse" and sanctions "act as a symbolic statement about the quality and integrity of an attorneys' work – a statement which may have [a] tangible effect upon the attorneys' career." *Id.* at 291.  Therefore, the sanctioning of an attorney should be considered an extreme remedy, limited only to circumstances of willful attorney conduct.  *Victoria Insurance Company v. Li He Ren, et al.*, Civ. A. No. 08-517, 2008 U.S. Dist. LEXIS 93798 *5 (E.D. Pa. November 10, 2008) (quoting *Baker Indus. Inc.*, 764 F.2d at 208).  "This is to ensure that the statutes application does not 'stifle the enthusiasm or chill the creativity that is the very life blood of the law.'"  *Id.* (*quoting Mone v. Comm'r of Internal Revenue*, 774 F.2d 570, 574 (2d Cir. 1985)).

Additionally, even upon a finding of bad faith, the courts have been reluctant to impose attorneys' fees and costs against an attorney based upon countervailing considerations.  *Mazzone*, 2008 U.S. Dist. LEXIS 32602 *5.  As the *Mazzone* Court recognized:

> One consideration is to preserve the "American Rule" which is the principle "that each party to a lawsuit bears its own attorneys' fees.  The "American Rule" is the cornerstone of American Legal Jurisprudence as it gives all economic classes of society the opportunity to litigate.  Another consideration is the attorneys' ethical duty to be a zealous advocate for his client.

*Mazzone*, 2008 U.S. Dist. LEXIS 32602 *5 (internal citations omitted).

Finally, once a decision is made to impose sanctions, the amount of the sanctions imposed must reflect only those costs actually caused by the sanctionable conduct.  *In re Prudential* 278 F.3d at 188.  "Moreover, these costs

and expenses are limited to those that could be taxed under 28 U.S.C. §1920."
*Id.*

Applying the above principles, in *Barbee v. Southeastern Pennsylvania Transportation Authority*, Civ. A. No. 04-4063, 2007 U.S. Dist. LEXIS 7317 (E.D. Pa. February 1, 2007), the court refused to impose sanctions against the Plaintiff's attorney under 28 U.S.C. § 1927.  *Barbee*, 2007 U.S. Dist. LEXIS 7317 *11.  Plaintiff's counsel in *Barbee* failed to respond to Defendant's discovery requests, failed to file a timely Pretrial Memorandum and pursued claims that were dismissed on summary judgment.  *Id.* at *10.  Plaintiff's counsel also listed trial witnesses that were never identified during discovery. As a result of this conduct, defense counsel was required to file various motions to obtain the compliance of plaintiff's counsel.  *Id.*  Recognizing that the actions of plaintiff's counsel were not "exemplary", and that he did "numerous things during the course of this litigation that slowed down the process", the *Barbee* Court declined to find that these actions were in willful bad faith for purposes of imposing § 1927 sanctions or that the conduct was motivated by a desire to harass or delay.  *Id.* at **10-11.  The court further found that the dismissal of certain claims on summary judgment was not proof that Plaintiff's counsel had no reasonable basis to file the lawsuit especially when it was only after discovery that facts were uncovered indicating that some of the claims should not move forward.  *Id.* at *11.

Similarly, in *Maule v. Philadelphia Meeting Holdings, LLC, et al.*, Civ. A. No. 08-3357, 2009 U.S. Dist. LEXIS 3569 (E.D. Pa. January 16, 2009), the

Court refused to sanction counsel under § 1927 because counsel advanced reasonable justifications for their actions and therefore, the conduct could not be characterized as unreasonable or vexatious. *Maule*, 2009 U.S. Dist. LEXIS 3569 at *9. In determining that the conduct was not vexatious, the Court reasoned:

> As noted above, they have advanced reasonable underlying explanations for each of the challenged actions. While their positions may not ultimately prevail, we cannot say that their actions have been completely unreasonable or vexatious. For this same reason, we find no evidence of bad faith or intentional misconduct in this case.

*Id. See also Pauza*, 2009 U.S. Dist. LEXIS 89913 *7 (requesting a sixty day extension of discovery and opposing a Motion for Summary Judgment is not evidence of bad faith or a legitimate basis for sanctions).

The determination as to whether there has been bad faith is made by the Court. *Boykin v. Bloomsburg Univ.*, 905 F. Supp 1335, 1347 (M.D.Pa. 1995). Even if the Court finds such bad faith, however, the appropriateness of sanctions is not axiomatic and the decision to impose monetary sanctions is always entrusted to the sound discretion of the Court. *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986). The Third Circuit has admonished that restraint must be exercised when deciding whether sanctions should be imposed, "lest the prospect chill the ardor of proper and forceful advocacy on behalf of [the] client." *Williams v. Giant Eagle Markets*, 883 F.2d 1184 (3d Cir. 1989).

**B.    Attorney For Plaintiffs Gregg D. Zeff Did Not Vexatiously Multiply Proceedings In The Present Matter Or Engage In Willful Bad Faith**

As reflected in the Procedural History and Statement of Facts set forth above, Mr. Zeff was at all time relevant hear representing the interests of two young men who had sustained serious injuries through no fault of their own. Both boys were the victims of the felonious actions of a Third Party who chose to engage in a high-speed flight from the Norristown Police Officers who had recognized he was driving a stolen car.  Those actions by Mr. Bailey, however, would not excuse any constitutional violations by the policemen who were chasing him, a municipality that had not properly trained them or the police officers negligence in carrying out the pursuit.  Certainly those were the proper subject of exploration by Mr. Zeff in connection with his obligation to zealously represent his clients.

The thrust of the Court's consternation with the continuation of this action and the apparent emphasis of Defendant's present motion (albeit not emphasized previously) is that the video produced by the dash cam in the Robinson vehicle demonstrates that there was no contact between the police car and the fleeing vehicle immediately prior to the Bailey car hitting the dip in the roadway and crashing. Fully accepting the clarity of the Court's view, it is respectfully suggested that the Court should not rely on that single disposition in determining that monetary sanctions are appropriate.  Moreover, the Defendant posited several legal arguments in support of its Motion for Summary Judgment and the Plaintiffs and Mr. Zeff countered each of those

arguments in the best interests of his clients in a responding brief without disregarding his duties to the Court and opposing counsel.  Even at oral argument, Mr. Zeff appeared to concede the relative lack of a strong argument that could be made to support the Plaintiffs' claims. Finally, his actions before the argument in suggesting resolution to his clients without recovery fully support that his representations were appropriately extended in the best intended representation of his clients.  His advocacy throughout was not presented in any willful disregard of his obligations to this Court or for nefarious purpose other than carrying out his continuing obligation to provide zealous representation to his clients. *See* the attached Affidavit of noted civil rights attorney David Rudovsky attached as Exhibit "D" supporting that position.

Simply stated, the record, including Mr. Zeff's prior behavior, exhibited respect for the Court and his opponent  and his current Affidavit, when taken as a whole, do rise to the level of conduct that merits the award of monetary sanctions as required under the provisions of Section 1927.

### C.    The Monetary Sanctions Sought By The Defendant Are Neither Reasonable Or In Keeping With The Actions Of Gregg L. Zeff

Defendant asserts that its carrier Travelers Insurance Company should be reimbursed for all the costs incurred in the entire litigation from its inception, and based upon the arbitrary start of deposition discovery, the fees that it paid for counsel to represent the interests of Defendant.  While a clear schedule of the costs and fees claimed is not made in the body of the Motion or Memorandum, it appears from the attachments that the actual fees from July

21, 2015 paid by Travelers totaled $33,714.11(no contest is asserted regarding the reasonability of the hourly rates or the amount of time spent on the asserted tasks) and that the costs of the litigation from its inception were $39,574.78. Defendant also asserts without support that the estimated amount of its fees for the submission of its Motion will be $1000.00.

Moreover, the costs and fees do not appear to have been paid by the Municipality of Norristown, but rather have been paid directly by non-party Travelers without discussion or supported suggestion of the Defendant's responsibility to repay its insurer any sums awarded by the Court.  The only supporting affirmation for the expenditure for fees and costs attached to the Motion was the short affidavit stating that the amounts paid by Travelers "were paid in the defense of the Municipality of Norristown."  No verification was attached to the Motion that the amounts so expended were reasonable or necessary in disposition of the Municipality's defense, including the bill of the liability expert totally $10,750.00 (which did not delineate when the time was spent), the fees of the orthopedic expert for an examination and preparation of a report ($1500) and for a cancelled, never held trial deposition ($4500.00), the payment to Disability Care Management Professionals of $2060.85 in response to a somewhat cryptic bill for record reviews and visits, a $7000.00 "retainer" paid for undisclosed services to Forensic Psychology & Neuropsychology Services, and thousands of dollars paid to Center City Legal Reproductions without any verification as to the necessity, reasonability or requirement of those services.

It is respectfully suggested that this inadequately supported presentation of a non-party insurer of its expenditures on behalf of its averred insured without supporting documentation of the insurance relationship or responsibility of the Municipality to even pay or be responsible to the insurer for the amounts claimed simply cannot be basis of the substantial claim asserted and Defendant has not presented any authority to support a claim for expenses where it has not suffered any losses or adequately explained the reasonableness or necessity of the expenses claimed.

Further, Section 1927 only authorizes the taxing of excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct. In the context of the present case, it is respectfully suggested that the Court should look to the Federal Rules of Procedure and the controlling cost statute for guidance.

Fed.R.Civ.Proc. 54(d)(1) provides in pertinent part that "(e)xcept when express provision therefore is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs."  Title 28 U.S.C. § 1920 indicates what costs may be compensated, including filing fees, transcript fees necessarily obtained for use in the case, printing fees, and fees for exemplification and copies of papers necessarily obtained for use in the case. A prevailing party in a civil rights case is in the same position with regard to costs as prevailing parties generally. *See Goostree v. State of Tennessee,* 796 F.2d 854 (6th Cir.1986), cert.

23

den. 480 U.S. 918, 107 S.Ct. 1374, 94 L.Ed.2d 689 (1987). Defendant has submitted a motion for costs which include such expenses as these, as well as expenses for fees and disbursements in excess of $3,200 for such items as telecopier charges, phone charges, courier expense, and computer time and research.

While Rule 54(d)(1) provides that, after entry of final judgment, "costs shall be allowed as of course to the prevailing party," the trial court possesses broad discretionary powers to allow or disallow them, *see Advance Business Systems and Supply Co. v. SCM Corporation,* 287 F.Supp. 143 (D.Md.1968), cert. denied 397 U.S. 920 (1970). This, however, does not permit a district court to order a losing party to reimburse a prevailing party for every expense the latter may have incurred. *See Dowdell v. City of Apopka, Florida,* 521 F.Supp. 297 (M.D.Fla.1981).

In light of the failure Defendant to explain and document the reasonableness and necessity of the costs claimed, It is respectfully urged that the claim for costs in the amount of $39,574.78 must not be allowed.

### D.   The Burden Of Paying The Sums Requested Must Be Considered In Setting Any Sanctions

In setting any monetarysanctions pursuant to the provisions of Section 1927, the Court must consider the ability of the individual attorney's ability to pay them. *Jones v. Pittsburgh National Corp.,*899 F.2d 1350, 1359 (3d Cir. 1990); *Doering v. Union County Bd. Of Chosen Freeholders*, 857 F.2d 191, 196 (3d Cir. 1988).  Because Mr. Zeff is properly reluctant to discuss the

implications of an imposed monetary sanction in the substantial amounts requested would have on his personal and professional finances in this public filing, he respectfully requests only that this issue be the subject of a further sealed disclosure if the Court deems that imposition of sanctions is appropriate in any amount.

## IV.   CONCLUSION

Accordingly, it is submitted that based upon controlling legal principles, the failure of Defendant to properly document averred costs that it personally did not expend or is obligated to reimburse, and the balance of the equities militating against the imposition of any sanctions, Defendant's Motion must be denied in its entirety.

Because of the severity of the requested sanctions, Mr. Zeff requests that the Court schedule oral argument to allow both he and his attorney address the Court.

Respectfully submitted,

*Alan B. Epstein*

Alan B. Epstein, Esquire (I.D. # 02346)
SPECTOR GADON & ROSEN, PC
Seven Penn Center
1635 Market Street, Seventh Floor
Philadelphia, PA 19103

*Attorney for Respondent Gregg D. Zeff*

Dated: March 25, 2016